UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| GREGORY GREER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 5:14-cv-109-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 7, 8] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits and supplemental security income. [Tr. 11-21].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will grant Plaintiff's motion and deny Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 13]. Under step two, the ALJ found that Plaintiff's history of coronary artery

2

disease, complaints of non-cardiac chest pain, stroke, breathing problems, Plaintiff's degenerative disc disease of the spine and neck, and his depression and anxiety were "severe" as defined by the agency's regulations. [Tr. 13]; 20 CFR § 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 13-14]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform less than the full range of light exertional work, but was limited to lifting and/or carrying 20 pounds occasionally, 10 pounds frequently; standing, walking, or sitting six hours out of an eight hour workday and for no more than 90 minutes at one time; and unlimited pushing or pulling ability. [Tr. 14-15]. Plaintiff was additionally limited in that he could occasionally stoop, kneel, crouch, crawl, climb ramps or stairs but never climb ladders, ropes, or scaffolds. [Tr. 15]. Any work performed by Plaintiff would have to consist of simple, routine tasks. [Tr. 15]. Finally, Plaintiff could occasionally work with the general public, co-workers, and supervisors, with no more than occasional, if any, changes in the workplace setting. [Tr. 15].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 20]. However, there were jobs in

the national economy that Plaintiff could perform. [Tr. 20]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 21].

Plaintiff appeals the decision of the ALJ. Plaintiff argues that the ALJ failed to include a non-examiner's opinion, which the ALJ had given great weight, in his hypothetical to the vocational expert. Therefore, Plaintiff contends that the hypothetical to the vocational expert failed to accurately describe his limitations, resulting in a denial of benefits.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was 51 years of age at the alleged disability date [Tr. 11, 34] and has a high school education along with two years of vocational training. [Tr. 34]. Plaintiff has past work experience as the owner of a used car lot where he worked as a car salesman, and several positions on factory work lines. [Tr. 224]. Plaintiff filed a Title XVI application for supplemental security income (SSI), alleging disability beginning on February 17, 2010. The claim was denied initially and upon reconsideration. [Tr. 11]. Plaintiff requested a hearing with the ALJ, which took place on October 18, 2012. [Tr. 11]. The ALJ issued an unfavorable decision denying SSI on December 10, 2012. [Tr. 21].

According to Plaintiff, he has chronic pain in his chest, back, legs, shoulders, arms, and hands. [Tr. 218]. Plaintiff claims that he has trouble remembering short term and has lost the ability to do tasks quickly due to a stroke in 2007. [Tr. 240]. His social activities are limited to taking his daughter to school and attending church, though he states that he has problems getting along with others and that depression has interfered with his relationships. [Tr. 237-38]. Plaintiff

stated that he handles stress or changes in routine poorly and suffers from extreme anxiety and irrational behavior. [Tr. 240].

Plaintiff was treated by Dr. Jeffrey McGinnis at Gateway Internal Medicine and Pediatrics for the majority of his medical impairments, which included depression and anxiety as well as increasing pain in his back, chest, head, shoulders, arms, and hands. [Tr. 258-84]. Dr. McGinnis referred Plaintiff to Drayer Physical Therapy in 2010, where he was treated for back pain. [Tr. 285-303]. On several occasions, Dr. Kevin Kneppers of the Mt. Sterling Chiropractic Center also treated Plaintiff for neck pain and upper, mid, and lower back pain. [Tr. 305-08]. In February 2011, St. Joseph Hospital admitted Plaintiff and diagnosed him with a Non-ST evaluation myocardial infarction, anxiety disorder, tobacco abuse, asthma, and positive family history for premature coronary artery disease. [Tr. 355].

Consultative examiner, Dr. Andrew Jones, examined the Plaintiff at the request of the state agency on July 14, 2011. Dr. Jones diagnosed Plaintiff with an anxiety disorder and included in his observations that Plaintiff demonstrated the ability to remember one or two step instructions as evidenced by the Plaintiff's compliance, persistence, pace and tolerance during the one to one and one half hour examination. [Tr. 608-09]. On September 10, 2011, consultative examiner Dr. Numukunda Darboe examined the Plaintiff at the request of the state

6

agency. Dr. Darboe found that the Plaintiff demonstrated a decreased range in motion and pain that would prohibit the Plaintiff from lifting more than 30 pounds. [Tr. 613]. Then, on October 2, 2012, Dr. Leigh Ann Ford examined Plaintiff at the request of Plaintiff's attorney. Dr. Ford diagnosed Plaintiff with depressive disorder and generalized anxiety disorder. [Tr. 704].

In addition, two physicians for the state agency reviewed Plaintiff's medical record. Dr. Ed Ross performed the initial mental residual functional capacity assessment on August 16, 2011. On October 26, 2011, Dr. Mary K. Thompson reviewed Plaintiff's medical record and issued a reconsideration of Dr. Ross's assessment. Her assessment led to the same conclusions as Dr. Ross, namely, that the Plaintiff was "moderately limited" only in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and further, that Plaintiff could "maintain attention for two hour periods across a normal workday." [Tr. 100-01].

Vocational expert Mr. Christopher Rymond testified at the hearing before the ALJ. [Tr. 65-73]. Mr. Rymond testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 68]. However, Mr. Rymond found that there would be jobs in the national economy that someone with Plaintiff's RFC could

7

perform. [Tr. 69-70]. Mr. Rymond also concluded that a hypothetical person with Plaintiff's RFC as well as problems with concentration due to anxiety who, as a result, was off task in excess of 20% of the workday, could not find any competitive employment. [Tr. 70-71]. Upon Plaintiff's attorney's question as to whether the same would result from being off task approximately 10% of the workday, the vocational expert responded that the "same sorts of jobs" would be available, "but a reduction in incidence by approximately half." [Tr. 72]. The vocational expert went on to elaborate that, if being off task was due to "work stress and problems functioning generally" or if breaks would need to occur several times an hour, this would preclude work. [Tr. 72-73].

Plaintiff testified that he suffers from fatigue, sometimes as a result of physical pain, other times as a result of anxiety. [Tr. 43]. He noted that money concerns and having to deal with people beyond his immediately family for more than an hour worsen his anxiety. [Tr. 44]. Plaintiff testified that he had back pain for years that limited his ability to sit and stand for longer periods of time. [Tr. 49]. He stated that he did not have too many problems with attention span, that he was able to watch a two-hour movie and that during such a movie, any disturbance may rarely (once or twice) draw his attention away for up to three minutes. [Tr. 50-51]. Plaintiff testified that

he is able to maintain his personal hygiene, occasionally do laundry, take short trips to the store, and enjoy cooking. [Tr. 54].

**IV. Analysis**

Plaintiff argues that the ALJ erred because it relied upon the testimony of the vocational expert in response to a hypothetical question that did not accurately describe the Plaintiff. In particular, Plaintiff contends that the hypothetical failed to include Dr. Thompson's opinions regarding Plaintiff's moderate limitations of attention and concentration, although the ALJ had given Dr. Thompson's analysis great weight. The Commissioner responds that the ALJ accounted for Dr. Thompson's opinions in the residual functional capacity finding and, to the extent that the ALJ's findings seem to depart from Dr. Thompson's narrative, those differences are immaterial.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). An "accurate portrayal" is, at least, a "fair summary" of a reviewing physician's conclusions regarding the Plaintiff's limitations. *Id*. at 516. However, the ALJ "is required to incorporate only those limitations accepted

as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The record indicates that the ALJ found Dr. Thompson's conclusions to be credible. The ALJ gives great weight to the opinions (including Dr. Thompson's) found in the DDS Reconsideration, "that the claimant could perform a limited range of light exertional work." [Tr. 19]. However, it is unclear here whether the ALJ was referring to that particular opinion regarding light exertional work, or the report as a whole. Although, in deciding whether Plaintiff's impairment would rise to the level of severity required by the listings, the ALJ explicitly found that Plaintiff's "mental impairment impose only ... moderate limitations in his ability to maintain... concentration, persistence, and pace." [Tr. 14]. Furthermore, there is no other instance in the record in which the ALJ dismissed Dr. Thompson's opinions regarding the Plaintiff's concentration limitations. This suggests that the ALJ noted Dr. Thompson's opinions, and the moderate limitations she listed, and found them to be credible. *See Mallott v. Colvin*, CIV.A. 5:13-305-DCR, 2014 WL 2574520 (E.D. Ky. June 9, 2014) (finding the ALJ's hypothetical sufficient even though it failed to include particular limitations because those limitations had not been expressly adopted by the ALJ).

If the ALJ found Dr. Thompson's opinions to be credible, at least a fair summary of those opinions should have been included in the hypothetical posed to the vocational expert. In this case, it was not. The only reference to mental impairments in the hypothetical posed to the vocational expert restricted the hypothetical worker to "no more than simple, routine work; no more than occasional interaction with coworkers or supervisors; no more than occasional contact with the general public; and no more than occasional, if any, changes in the workplace setting." [Tr. 68]. An additional hypothetical was asked by both the ALJ and then by Plaintiff's attorney, but the ALJ ultimately relied upon the first in its RFC finding and in its conclusion that other work was available to the Plaintiff. This hypothetical made no reference to impairments in concentration or persistence, nor did the ALJ's RFC finding. *See Ealy*, 594 F.3d at 516 (finding that, where a physician limited Plaintiff to working "[two-hour] segments over an eight-hour day where speed was not critical," and the ALJ's hypothetical asked to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings," the hypothetical did not serve as substantial evidence); *see, e.g., Smith-Johnson v. Comm'r of Soc. Sec.*, 13-1696, 2014 WL 4400999 (6th Cir. Sept. 8, 2014) (where physician had not placed any "concrete functional limitations," like a two-hour limit, on the claimant's ability

11

to concentrate, hypothetical's reference to "simple, routine tasks" was sufficient to summarize the physician's findings).

The Commissioner contends that the ALJ need not state explicitly the two-hour interval because it is common in a work place setting to work for two hours and then break. Indeed, the vocational expert testified to this practice in its response to the hypothetical posed by Plaintiff's attorney. [Tr. 73]. However, the Sixth Circuit has not been willing to rely on such an assumption, having held that limitations related to two-hour intervals should be included, or at least referenced in summary version, in the hypothetical posed to the vocational expert, regardless of typical workplace practices. *See Ealy*, 594 F.3d at 516.

Finally, the Commissioner argues that the differences between the ALJ's analysis and Dr. Thompson's report are harmless error. This is not persuasive, given the vocational expert's testimony that the amount of work available changes based on subtle differences in the ability of the worker to concentrate for various lengths of time and the reason for being off task, [Tr. 71-72], as well as the Sixth Circuit's treatment of similar cases. *See, e.g., Ealy*, 594 F.3d at 516; *Williams v. Colvin*, 7:13-CV-98-JMH, 2014 WL 1513181 (E.D. Ky. Apr. 16, 2014) (remanding case where ALJ did not present an accurate hypothetical question to the vocational expert, in addition to

one other error); *Vasquez v. Astrue*, 6:12-CV-125-KSF, 2013 WL 1498895 (E.D. Ky. Apr. 11, 2013) (remanding case solely because ALJ's hypothetical question did not account for physician's conclusions).

In sum, the ALJ acknowledged Dr. Thompson's opinions, yet failed to fairly summarize them in the hypothetical it posed to the vocational expert. Plaintiff's limitations were not fully conveyed to the vocational expert and therefore, the vocational expert's determination cannot serve as substantial evidence for the ALJ's finding that there is other work available to the Plaintiff.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 7] be, and the same hereby is, **GRANTED**;

(2) that Commissioner's Motion for Summary Judgment [D.E. 8] be, and the same hereby is, **DENIED**.

(3) that the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

This the 7th day of October, 2014.



Signed By:
*Joseph M. Hood*  JMH
Senior U.S. District Judge